**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Melissa E.,

      Plaintiff,

v.

Frank Bisignano, Commissioner of Social
Security Administration,

      Defendant.

No. 24-cv-4438 (DLM)

**ORDER**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Melissa E. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits. This matter is before the Court on Plaintiff's brief seeking judgment on the administrative record. (Doc. 10.) The Commissioner filed his response brief seeking affirmance of the Commissioner's decision on June 3, 2025. (Doc. 16.) Plaintiff filed her reply brief on June 17, 2025. (Doc. 17.) This matter is now ripe for the Court's decision. For the reasons stated below, the Court affirms in part and reverses in part the Commissioner's decision, and remands this matter to the Commissioner for further proceedings consistent with this Order.

**BACKGROUND**

On April 15, 2021, Plaintiff applied for Supplemental Security Income ("SSI"), alleging disability beginning on April 12, 2021. (Tr.[1] at 450-58.) The Social Security Administration ("SSA") denied Plaintiff's claim initially and upon reconsideration. (Tr. at 358-62 (initial denial), 366-68 (reconsideration).) Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on this matter on October 4, 2023. (Tr. at 374 (hearing request), 176-205 (hearing transcript).) Plaintiff was represented by counsel, appeared at the hearing, and testified on her own behalf. (Tr. at 178-86, 193-98.) The ALJ also called Dr. Ken Berger,[2] to provide his expert medical opinion regarding Plaintiff's physical health condition and any associated functional restrictions. (Tr. at 186-193.) Dr. Berger testified that Plaintiff suffered from a number of severe physical impairments and conditions, including: degenerative disc disease of the lumbar spine with moderate spinal stenosis; impingement on a right lumbar nerve root[3]; asthma; chronic obstructive pulmonary disease; diabetes; hepatitis C; migraines; a history of discectomy and a fusion of the neck; and trochanteric bursitis of the hips. (Tr. at 187.) Based on these conditions and the remainder of Plaintiff's medical records, Dr. Berger opined that Plaintiff would need several manipulative and postural work restrictions including—most relevant to this review—time limits on walking (roughly two hours at one

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on February 10, 2025. (Docs. 6, 6-1.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document.

[2] Dr. Berger is erroneously identified in the transcript of Plaintiff's hearing as Dr. Timothy Burger. (*Compare* Tr. at 186 *with* Tr. at 1341-51.)

[3] *See also* Tr. at 584.

time, no more than four hours in an eight-hour day) and standing (three hours straight, no more than six hours in an eight-hour workday). (Tr. at 188.) "So, combined walking and standing it would be no more than six hours." (Tr. at 189.)

The ALJ also heard testimony from Eric Pruitt, a vocational expert. (Tr. at 198-204.) The ALJ posed hypotheticals to Mr. Pruitt regarding the availability of jobs in the national economy for someone with manipulative, postural, and mental limitations similar to Plaintiff, limited solely to "light" work.[4] (Tr. at 200-01.) Among the specific limitations for the hypothetical worker were that she stand no more than a total of six hours in an eight-hour day (only three continuous standing hours), and walk no more than a total of four hours in an eight-hour day (only two continuous standing hours). (Tr. at 199.) Mr. Pruit opined, based on the entirety of limitations in the ALJ's hypothetical, that there were significant jobs in the national economy across three representative occupations listed in the Dictionary of Occupational Titles ("DOT"), each of which this hypothetical person could perform: mail clerk, (DOT No. 209.687-026); collator operator (DOT No. 208.685-010); and routing clerk (DOT No. 222.687-022). (Tr. at 201-02.) Plaintiff's counsel asked Mr. Pruitt if these jobs would still be available if the hypothetical person were only able to

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

walk and/or stand for a total of four hours per workday, and Mr. Pruit replied, "In my opinion, yes." (Tr. at 203.)

On November 16, 2023, the Commissioner sent a notice of unfavorable decision to Plaintiff. (Tr. at 8-37.) The ALJ recognized that Plaintiff suffered from each of the conditions identified by Dr. Berger, as well as the following additional severe and non-severe impairments: chronic pain syndrome; bipolar disorder; generalized anxiety disorder; personality disorder/borderline personality disorder by history; post-traumatic stress disorder; gastroesophageal reflux disease ("GERD"); obesity; essential hypertension; fatty liver; and hyperlipidemia. (Tr. at 13-14.)

Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC")[5] to perform light work with the following additional limitations:

> stand for six (6) hours in an eight hour day but no continuous standing of more than three (3) hours; walk for four (4) hours in an eight hour day but no continuous walking of more than two (2) hours; push and pull same as lift and carry; frequently reaching overhead to the left, and frequently reaching overhead to the right. For all other reaching she can reach frequently to the left and can reach frequently to the right. She can handle items frequently with the left hand and can handle items frequently with the right hand. She has fingering limitations frequently with the left hand and has fingering limitations frequently with the right hand. The claimant has feel limitations frequently on the left and has feel limitations frequently on the right. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally - as that term is defined in the "Selected Characteristics of Occupations" ("SCO"), stoop occasionally, kneel occasionally, crouch occasionally, and never crawl. The claimant can never work at unprotected heights, never moving mechanical parts, and no

---

[5] "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)) (cleaned up).

commercial driving. No work in humidity and wetness. Indoor work will be in a well-ventilated HVAC controlled setting. No indoor or outdoor work requiring direct exposure to concentrated sources of pulmonary irritants. No work in extreme cold or extreme heat. No use of hand power tools or similar direct and sustained physical contact with heavy vibrating machinery and in a moderate noise level. No working in bright sunlight. Indoor work will be in lighting conditions no brighter than found in ordinary and typical office settings. Can understand, carry out, and remember and use judgment necessary to complete simple, routine and repetitive tasks, can adapt to can respond appropriately to the public, supervision and coworkers in usual work situations, but no complex teamwork or other social interaction requiring a code lower than an eight (8) on the People Scale of Appendix B to the "Dictionary of Occupational Titles", 1991 Revised Edition, able to meet the production standards of simple, routine, repetitive work but no assembly line work or other work similarly requiring an unvarying fast pace.

(Tr. at 17-18.)

Even with these significant restrictions, the ALJ concluded Plaintiff was not disabled. (Tr. at 32.) In doing so, the ALJ credited the testimony of Vocational Expert Pruitt that Plaintiff could perform the jobs of mail clerk, collator operator, and routing clerk. (Tr. at 31.) The ALJ recognized that "[t]hese are all light jobs per the vocational expert," but did not address the vocational expert's opinion that each of these jobs would be available even if Plaintiff could only stand or walk for a total of four hours out of an eight-hour day. (Tr. at 31.)

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. § 416.920(a)(4)[6] for evaluating SSI claims. Rather, she asserts that the

---

[6] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and

ALJ's RFC finding is not based on substantial evidence for essentially two reasons: (1) the ALJ discounted Plaintiff's subjective complaints of pain associated with standing and walking without conducting an appropriate analysis of those complaints; and (2) the RFC, as written, suggests Plaintiff could stand and walk for a complete eight-hour workday, for which there is no evidentiary basis.[7]

The Court finds no error in the ALJ's analysis of Plaintiff's subjective complaints of pain. The ALJ thoughtfully and carefully conducted that analysis, consistent with the applicable regulatory framework. Indeed, the ALJ's decision as a whole reflects a deep and considered analysis of Plaintiff's circumstances. However, the Court agrees with Plaintiff that the RFC does not clearly reflect any aggregate limitation on Plaintiff's ability to stand and walk; that is, the RFC suggests Plaintiff could tolerate standing and walking throughout the entire workday so long as there were limits on how long she was doing one before resorting to the other. Substantial evidence does not support that component of the RFC. And the error is not harmless: the DOT's description of each of the representative occupations indicates they all involve light work, which by definition requires "a good deal of walking or standing." 20 C.F.R. § 416.967(b). The vocational expert's opinion that each of the representative jobs could be performed with only a half-day's worth of standing

---

determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(i-v), (d-e).

[7] Plaintiff does not object to the ALJ's analysis of her other mental and physical impairments and restrictions. (Doc. 17 at 2.)

and/or walking presents a conflict with the DOT which was left unresolved. As a result, the matter must be remanded.

## ANALYSIS

This Court reviews the ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision was infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1138, 1154 (2019) (cleaned up) (further citation omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1090 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to determine whether it contains sufficient evidence to support the ALJ's conclusion. *Biestek*, 139 S. Ct. at 1154; *Grindley v. Kijakazi*, 9 4th 622, 627 (8th Cir. 2021). When substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089.

## I.    THE ALJ APPROPRIATELY ANALZYED PLAINTIFF'S SUBJECTIVE COMPLAINTS OF PAIN.

Plaintiff's first assertion is that the ALJ committed error in evaluating and ultimately discounting Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms. An ALJ must consider a Plaintiff's subjective claims of limiting symptoms

according to the entirety of the evidence, *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016), including factors sometimes referred to as the "*Polaski* factors." *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (requiring ALJ to consider (1) the plaintiff's daily activities; (2) the duration, frequency, and intensity of the plaintiff's pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the plaintiff's functional restrictions). This aligns with the requirements set forth by the SSA in SSR 16-3p. *See* SSR 16-3p, 2017 WL 5180304, at *7-8 (S.S.A. Oct. 25, 2017) (discussing the factors an ALJ must use to evaluate the intensity, persistence, and limiting effects of an individual's symptoms). An ALJ need not "explicitly discuss each *Polaski* factor." *Strongson v. Barhnart*, 361 F.3d 1066, 1072 (8th Cir. 2004) (further citation omitted). But they must, at the least, "acknowledge[] and consider[] those factors before discounting a claimant's subjective complaints." *Id.*; *see also Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) ("This court has long required an ALJ to consider the [*Polaski*] factors when evaluating a claimant's credibility[.]"). If an ALJ discredits a claimant's testimony, and gives a good reason for doing so, courts will generally defer to that ALJ's credibility findings. *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016).

Plaintiff contends that the ALJ's evaluation of her subjective complaints was deficient because it did not consider her activities of daily living, and because it misrepresented Plaintiff's conservative course of treatment without mention of why Plaintiff did not more aggressively treat her back and neck ailments. Plaintiff admits that the ALJ conducted *some* analysis of her daily activities, but states that none of that analysis

8

related to her core contention of limitations with standing and walking. (Doc. 17 at 7-9.) Plaintiff also contends that the ALJ cherrypicked record evidence to conclude that she failed to optimize the benefits of treatment for her back and neck pain by missing appointments and rejecting therapeutic interventions. According to Plaintiff, the ALJ erred here by not honoring SSR 16-3's mandate to consider reasons why the claimant might not have chosen a more aggressive course of treatment. *See* SSR 16-3, 2017 WL 5180304, at *9.

Plaintiff is correct that the ALJ found that her statements about "the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 24.) But Plaintiff is incorrect that the ALJ did not adequately explain his reasoning. First, the ALJ correctly noted that Plaintiff had reported some benefits from medications. (Tr. at 25.) The records cited by the ALJ support this conclusion. On February 12, 2021, Plaintiff informed her doctor that she had significant, persistent back pain, but that "the gabapentin helps some and she is taking quite a bit of ibuprofen daily as well." (Tr. at 659.) And during an August 2, 2023 appointment about her neck pain, Plaintiff told her doctor that she gets "some relief from topical lidocaine," resulting in Plaintiff's doctor calling in a prescription for her. (Tr. at 1295.) Plaintiff complains that the ALJ's few citations paint an incomplete picture of her medication benefits, and that increasing the aperture to the entire record would reveal "poorly controlled pain" throughout the disability period. (Doc. 10 at 26.) But the ALJ *did* consider other evidence of Plaintiff's pain, medication use, and medication seeking behavior. (*See* Tr. at 23-25 (citing Tr. at 1331 (August 2, 2022 appointment noting

9

Plaintiff's high doses of pain medication and refusing additional medication), Tr. at 1290 (September 1, 2023 appointment noting back pain and prescribing short term prescription of oxycodone "contingent on patient actively participating in physical therapy"), Tr. at 763 (December 3, 2021 appointment noting Plaintiff was on maximum dose of gabapentin and was using more than prescribed).) There is no error here.

Additionally, and contrary to Plaintiff's assertion, the ALJ did not misrepresent the record regarding Plaintiff's relationship with physical therapy. It is true that Plaintiff went to physical therapy once, on September 28, 2023.[8] (Tr. at 128-33.) But it is also true, as the ALJ noted, that the entirety of Plaintiff's medical records reflect a regular and consistent pattern of declining physical therapy, despite the recommendation of several providers over several years. (Tr. at 25 (citing Tr. at 658 (February 15, 2021 treatment notes referring Plaintiff to physical therapy but indicating Plaintiff would only attend if she received additional pain medication), Tr. at 644 (April 1, 2021 treatment notes indicating Plaintiff had previously declined physical therapy), Tr. at 769 (October 21, 2021 treatment notes indicating referral to physical therapy), Tr. at 1295 (August 2, 2023 treatment notes indicating Plaintiff referred to physical therapy but refused); *see also* Tr. at 622 (May 25, 2021 treatment notes that Plaintiff "no showed" for appointment with "physical medicine and rehab" because she felt she could not walk there).) Additionally, the ALJ referenced a

---

[8] Plaintiff notes that she returned to physical therapy again in November 2023. (Doc. 10 at 9.) This second appointment occurred on November 15, 2023—the day before the ALJ issued his decision. There is no indication the ALJ was aware of this appointment. Regardless, treatment notes for this appointment support the notion that Plaintiff was engaged in conservative treatment, since Plaintiff returned to therapy after "a 48 day gap in her treatment due to several cancellations." (Tr. at 137.)

September 1, 2023 appointment during which Plaintiff's doctor issued a short term prescription for oxycodone "contingent on patient actively participating in physical therapy." (Tr. at 24 (citing Tr. at 1290).) This supports the inference that the ALJ was aware that while Plaintiff had not participated in physical therapy for several years of her disability period, she may be undertaking it soon. Against this backdrop, reversing the ALJ for failing to identify Plaintiff's single physical therapy appointment would amount to the nitpicking not commensurate with this Court's review of ALJ decisions. *See Lane v. O'Malley*, No. 23-1432, 2024 WL 302395, at *1 (8th Cir. Jan. 26, 2024) (per curiam) ("We decline to nitpick [the ALJ's] well-reasoned decision.") (citing *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam)); *Rachel H. v. Kijakazi*, No. 22-cv-1634 (JRT/DLM), 2023 WL 4374165, at *5 (D. Minn. June 12, 2023) ("The Eighth Circuit instructs lower courts to 'harmonize statements where possible,' and to avoid nitpicking when reviewing ALJ determinations.") (quoting *Tasha W. v. Berryhill*, 17-cv-4933 (KMM), 2019 WL 1170666, at *3 (D. Minn. Mar. 13, 2019)), *R. & R. adopted*, 2023 WL 4373922 (D. Minn. July 6, 2023).

Likewise, the Court finds no error in the ALJ's analysis of Plaintiff's activities of daily living. There is no requirement that the ALJ conduct an extensive analysis of whether each and every one of a Plaintiff's daily activities are consistent (or inconsistent) with the claims of impairment. On the contrary, an ALJ need not "explicitly discuss each factor, and we will defer to credibility determinations that are supported by good reasons and substantial evidence." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citation omitted); *see also Ross v. O'Malley*, 92 F.4th 775, 780 (8th Cir. 2024). Here, the ALJ

11

provided several reasons for discounting Plaintiff's self-assessment. Most notably, that assessment was inconsistent with the observations of Plaintiff's medical providers and her course of treatment. This alone is sufficient to satisfy this Court's "good reasons and substantial evidence" review. *Accord Schwandt*, 926 F.3d at 1012. But the ALJ did, in fact, detail Plaintiff's daily activities in his decision. As the ALJ noted, Plaintiff cares for her dog and cat, cooks, cleans, uses the laundromat, and does other mostly sedentary activities.[9] (Tr. at 25, 30; *see also* Tr. at 1116.) At bottom, Plaintiff's complaint here does not appear to be that the ALJ did not consider her activities of daily living, but rather that the ALJ did not conclude, based on her activities of daily living, that Plaintiff's testimony must be credited. But not all *Polaski* factors must weigh one way or another; a person may well have mostly sedentary days and still be found to have exaggerated their pain and symptomology based on other record evidence. Where, as here, that seems to be the case, the Court defers to the ALJ's credibility determination.

## II.     THE RFC'S SUGGESTION THAT PLAINTIFF COULD PERFORM JOBS THAT REQUIRED A COMBINATION OF STANDING OR WALKING FOR A FULL WORKDAY IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

Plaintiff next contends that the ALJ's RFC imposed lesser restrictions on Plaintiff's stand and walk abilities than any record evidence would support. Specifically, the ALJ purported to rely on the expert testimony of Dr. Berger in crafting the RFC. Dr. Berger opined that Plaintiff could walk only a total of four hours per workday, and could stand for

---

[9] While the ALJ discussed some of these activities in the context of Plaintiff's mental limitations, they are nonetheless obviously germane to her physical limitations.

a total of six hours per workday, but that Plaintiff could only tolerate a combined stand/walk timeframe of six hours per workday. (Tr. at 19, 188-89.) The RFC, however, does not clearly reflect the limitation of a combined stand/walk timeframe of six hours per workday. (Tr. at 17.)

The Commissioner responds with three arguments, none of which carry the day. First, the Commissioner asserts that the ALJ was not required to adopt Dr. Berger's restrictions verbatim, even after finding them persuasive. That is, of course, true. But divergence is not the issue here; it is *unsupported* divergence: the Commissioner points to no record evidence that would have supported the notion Plaintiff could tolerate a combination of standing and walking for a full workday. Second, the Commissioner contends that by imposing a "light work" limitation, the ALJ was necessarily limiting Plaintiff to sitting or standing for a total of six hours of the workday, since that is consistent with SSR 83-10's exertional level for "light work." SSR 83-10, 1983 WL 31251, at *5-6. But the ALJ did not reference SSR 83-10 in the RFC. Instead, the RFC defined "light work" by reference to 20 C.F.R. § 416.967(b), which contains no limitation on the amount of time a person could stand or walk.

Finally, the Commissioner suggests that any error is harmless, since the vocational expert testified that all three representative jobs could be performed by someone who was only standing or walking a total of four hours per workday. It is Plaintiff's burden to establish an error is harmful by providing some evidence that the ALJ would have decided differently absent the error. *Byers v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). Plaintiff has met that burden here. While the vocational expert testified that all three representative

13

occupations required only a half-day's worth of standing and walking, the DOT definition of those jobs contains no such limitations. And the Eighth Circuit has long held that "before an ALJ can rely on a vocational expert's testimony that appears to conflict with a [DOT] listing, the ALJ must identify and resolve the conflict. Otherwise, the vocational expert's testimony is not substantial evidence to support a denial of benefits." *Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 558 (8th Cir. 2018). Here, the ALJ did not resolve the conflict between the vocational expert's opinion that all three representative jobs were available to a person who could only walk or stand half of a workday and the DOT's absence of such a limitation.[10] As such, it is unclear from the record whether the DOT jobs identified by the vocational expert would remain available to Plaintiff if the RFC was properly limited consistent with record evidence. This necessitates remand.

### ORDER

Based on the above findings, as well as the files, records, and proceedings above,

**IT IS ORDERED** that:

1. Plaintiff's request for judgment on the administrative record (Doc. 10) is **GRANTED IN PART** and **DENIED IN PART**;

2. Defendant's request for judgment on the administrative record (Doc. 16) is **GRANTED IN PART** and **DENIED IN PART**; and

3. This case is **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Order.

---

[10] The Court does not fault the ALJ for not identifying and resolving the conflict, here, since this component of the vocational expert's testimony did not underpin the ALJ's decision.

15

DATED: March 9, 2026                        _s/Douglas L. Micko_
                                            DOUGLAS L. MICKO
                                            United States Magistrate Judge

15